1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JERRY WAYNE GENTRY,                        No.  2:13-cv-0142 WBS KJN P

12                    Petitioner,

13          v.                                  FINDINGS & RECOMMENDATIONS

14   RANDY GROUNDS,

15                    Respondent.

16

17   I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2011 conviction for false

20   imprisonment, criminal threats, two counts of assault with a deadly weapon, battery with serious

21   bodily injury, and sexual battery by restraint.  Petitioner was sentenced to 25 years in state prison.

22   Petitioner raises nine claims alleging constitutional error.  After careful review of the record, this

23   court concludes that the petition should be denied.

24   II.  Procedural History

25          "A jury acquitted petitioner of attempted murder but convicted him of six offenses arising

26   from an incident in which he used some 'muscle' over a drug debt."  People v. Gentry, 2012 WL

27   3089829 (Cal. App. 3 Dist., July 31, 2012).  On February 1, 2011, a jury found petitioner guilty

28   of false imprisonment, criminal threats, two counts of assault with a deadly weapon, battery with

1

1  serious bodily injury, and sexual battery by restraint.  (Clerk's Transcript ("CT") 1151.)  On April

2  22, 2011, petitioner was sentenced to 25 years in state prison.  (CT 1391.)

3      Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

4  District.  The Court of Appeal affirmed the conviction on July 31, 2012.

5      Petitioner filed a petition for review in the California Supreme Court, which was denied

6  on October 31, 2012.  (Respondent's Lodged Documents ("LD") 17.)

7      Petitioner filed the instant petition on January 24, 2013.  (ECF No. 1.)

8  III.  Facts[1]

9      In its unpublished memorandum and opinion affirming petitioner's judgment of

10  conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

11  following factual summary:

12          The principal prosecution witnesses were Michael Ebert (the
13          victim), April Collins, and Devin Chandler (through prior
            testimony).

14          Ebert testified that defendant summoned him one night in October
15          2009 to a rural location known as "the Ranch." Collins and
            Chandler took him there. Ebert owed defendant money on a
16          methamphetamine deal.

17          Upon arrival, around midnight, Ebert was greeted with a punch in
            the mouth by some "bigger" guy, and told to sit in a chair. About 30
18          minutes later, defendant appeared. Things only went downhill from
            there.

19          Defendant, who had apparently just gotten "really high" with
20          Collins, directed someone to get "ties." The "ties" were furnished,
            in the form of leather straps and a mouth ball. Then defendant,
21          along with another person who had arrived, Jesse Bacon, proceeded
            to kick, punch, and beat Ebert, at times using a heavy (Maglite)
22          flashlight.

23          During the lengthy ordeal, defendant, armed with a knife, also
            threatened to cut Ebert from head to toe, threatened to cut Ebert up
24          and throw him in the woodpile, and, after pulling down Ebert's
            pants, tried to cut Ebert's penis with the knife and tried to sodomize
25          Ebert with the flashlight.  Defendant repeatedly asked Ebert if he
            wanted defendant to "screw him."  At one point, Ebert was stabbed

26

27  _____
    [1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
    District in <u>People v. Gentry</u>, No. C068095 (July 31, 2012), a copy of which was lodged by
28  respondent as Lodged Document 15 on July 1, 2013.

                                    2

1    in the elbow with the knife.  During the beating, Ebert was knocked
     out several times.

2

3    The beating eventually ended when others on the premises implored
     defendant and Bacon to stop.

4    When Ebert was outside leaving, defendant told him if he did not
     return with the marijuana plants (which Ebert had offered as
5    payment), defendant would find him and kill him.

6    Collins corroborated much of Ebert's account, but, during her short
     glimpses into the living room from her position in the kitchen, she
7    never saw a knife or reported defendant with a flashlight (she did
     hear defendant, however, threaten to cut Ebert open).

8
     After Chandler refused to testify at trial, some of his preliminary
9    hearing testimony was read to the jury.  Contrary to what he had
     told the police, Chandler testified at the preliminary hearing that he
10   never saw anyone use restraints on Ebert, or anyone put a knife to
     Ebert's penis, or defendant or Bacon hit Ebert with anything.

11
     Around 10 days after the incident, Ebert reported it to Agent Robert
12   Carrell, his contact on the Shasta Interagency Narcotics Task Force
     (SINTF), for which Ebert had been an informant.  And, according
13   to jailhouse Deputy Sheriff Jack McCormick, defendant stated to
     him after the incident -- perhaps jokingly, while asking McCormick
14   to make photocopies of some police reports in this matter -- that he
     (defendant) never did anything with a flashlight, but he grabbed the
15   man's genitals and threatened to cut them off with a knife.
     McCormick did not write a report about this until six months later,
16   and only then at Agent Carrell's prompting.

17   (People v. Gentry, slip op. at 1-2.)

18   IV.  Standards for a Writ of Habeas Corpus

19          An application for a writ of habeas corpus by a person in custody under a judgment of a

20   state court can be granted only for violations of the Constitution or laws of the United States.  28

21   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

22   application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502

23   U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

24          Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

25   corpus relief:

26   An application for a writ of habeas corpus on behalf of a person in
     custody pursuant to the judgment of a State court shall not be
27   granted with respect to any claim that was adjudicated on the merits
     in State court proceedings unless the adjudication of the claim -

28

3

1
2
        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3
4
        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5   28 U.S.C. § 2254(d).

6        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

7   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

8   Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

9   38 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529

10   U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is

11   clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at

12   859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent

13   may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a

14   specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S.

15   Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).

16   Nor may it be used to "determine whether a particular rule of law is so widely accepted among

17   the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.

18   Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said

19   that there is "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S.

20   70, 77 (2006).

21        A state court decision is "contrary to" clearly established federal law if it applies a rule

22   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

23   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

24   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

25   writ if the state court identifies the correct governing legal principle from the Supreme Court's

26   decisions, but unreasonably applies that principle to the facts of the prisoner's case. [2]  Lockyer v.

27

28   [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

4

1    Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

2    (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

3    court concludes in its independent judgment that the relevant state-court decision applied clearly

4    established federal law erroneously or incorrectly.  Rather, that application must also be

5    unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

6    (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

7    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

8    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

9    'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

10   Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

11   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

12   must show that the state court's ruling on the claim being presented in federal court was so

13   lacking in justification that there was an error well understood and comprehended in existing law

14   beyond any possibility for fairminded disagreement."  Richter,131 S. Ct. at 786-87.

15         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

16   court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

17   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

18   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

19   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

20   considering de novo the constitutional issues raised.").

21         The court looks to the last reasoned state court decision as the basis for the state court

22   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

23   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

24   previous state court decision, this court may consider both decisions to ascertain the reasoning of

25   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

26   federal claim has been presented to a state court and the state court has denied relief, it may be

27   _____

28   presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
     384 F.3d 628, 638 (9th Cir. 2004).

1    presumed that the state court adjudicated the claim on the merits in the absence of any indication

2    or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85.  This

3    presumption may be overcome by a showing "there is reason to think some other explanation for

4    the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

5    803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

6    but does not expressly address a federal claim, a federal habeas court must presume, subject to

7    rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 133 S. Ct.

8    1088, 1091 (2013).

9         Where the state court reaches a decision on the merits but provides no reasoning to

10   support its conclusion, a federal habeas court independently reviews the record to determine

11   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

12   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

13   review of the constitutional issue, but rather, the only method by which we can determine whether

14   a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no

15   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

16   reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

17        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

18   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

19   just what the state court did when it issued a summary denial, the federal court must review the

20   state court record to determine whether there was any "reasonable basis for the state court to deny

21   relief." Richter, 131 S. Ct. at 784.  This court "must determine what arguments or theories . . .

22   could have supported, the state court's decision; and then it must ask whether it is possible

23   fairminded jurists could disagree that those arguments or theories are inconsistent with the

24   holding in a prior decision of [the Supreme] Court." Id. at 786.  The petitioner bears "the burden

25   to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v.

26   Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

27        When it is clear, however, that a state court has not reached the merits of a petitioner's

28   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

1   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

2   F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

3   V.  Petitioner's Claims

4        A.  Admission of Propensity Evidence

5        Petitioner claims that the trial court erred by admitting needless other crimes and violent

6   propensity evidence to prove the sustained fear element of the criminal threats charge which

7   petitioner contends were not reasonably in dispute.  Petitioner argues that at a minimum, the court

8   erred by admitting details concerning persistent high level drug dealing, drug manufacturing, and

9   prison associations suggesting that petitioner was a violent leader, all of which were not relevant

10  to the instant crimes, and were unduly prejudicial.  Petitioner contends the admission of this

11  evidence posed an undue risk that the jury would find petitioner guilty based on the irrelevant and

12  unduly prejudicial evidence rather than the evidence of the charged offenses, and that the "spotty"

13  limiting instructions were insufficient to reduce the prejudice.

14       Respondent contends there is no basis for habeas relief based on the admission of

15  propensity evidence because no Supreme Court precedent supports such claim, and, in any event,

16  even assuming the evidence was erroneously admitted, such error did not have a substantial and

17  injurious effect on the verdict.

18       1.  State Court Opinion

19       The last reasoned rejection of petitioner's first claim is the decision of the California

20  Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court

21  addressed this claim as follows:

22           Defendant contends the trial court erroneously admitted on the
             criminal threats charge -- under Evidence Code sections 1101 and
23           352 -- evidence of four instances of prior misconduct on his part.

24           In reviewing this contention, we ask whether the trial court abused
             its discretion in admitting this evidence. (People v. Memro (1995)
25           11 Cal.4th 786, 864 [Evid. Code, § 1101]; People v. Branch (2001)
             91 Cal.App.4th 274, 282 [Evid. Code, § 352].)  As we shall explain,
26           the court did not.

27           Evidence Code section 1101 forecloses evidence of a defendant's
             prior misconduct to show he committed the current offense, but
28           permits such evidence, in limited fashion, to show a state of mind,

                                          7

such as intent or knowledge. (Evid. Code, § 1101, subds. (a), (b).) Under Evidence Code section 352, a trial court weighs the probative value of such evidence against any undue prejudicial effect.

The trial court admitted the following challenged testimony from the victim, Ebert: (1) Ebert had heard about defendant "being so dangerous," a "bigwig in the drug game . . . the drug world"; (2) Ebert said defendant once became "very, very mad" and threatened to kill a person who had driven around in a car containing defendant's fingerprint-laden meth lab (in this escapade, Ebert had been a passenger in the car); (3) Ebert testified that a "lot of people get work through [defendant], meaning work, meaning dope"; and (4) according to Ebert, "a lot of the convicts . . . would do anything for [defendant]."

In line with relevant state of mind evidence under Evidence Code section 1101, Ebert provided this testimony in the context of why he "reasonably [was] in sustained fear for his . . . own safety" from defendant's threats, which is one of the elements of the Penal Code section 422 criminal threats charge. (Pen. Code, § 422, subd. (a).) Such testimony was admissible to show Ebert's fear from defendant's threats. (People v. Garrett (1994) 30 Cal.App.4th 962, 967-968.) As Garrett further noted, "[s]eldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense." (Id. at p. 967.)

Defendant disputes that this testimony was admissible under Evidence Code sections 1101 and 352, arguing, "[t]here was no need to tie [defendant's] supposed violent reputation to any of these matters -- persistent high level drug dealing, drug manufacturing, and prison associations. . . . [T]he details served as improper backdoor proof [defendant] was the sort of person (indeed a drug dealer and convict) who would commit the sorts of acts . . . reported by . . . Ebert." However, the challenged testimony showed that defendant's violent reputation arose out of his drug dealing activities. And defendant allegedly threatened Ebert for failing to pay a drug deal debt. Consequently, Ebert's challenged testimony was relevant to his fear from defendant's threats.

Furthermore, defendant argues that his "claimed 'attack on Ebert was so horrific that it, standing alone, was sufficient evidence from which the jury could reasonably conclude that Ebert was in . . . reasonable sustained fear as a result of [defendant's] threats.' " Hence, the challenged testimony was unnecessary under Evidence Code section 1101 and unduly prejudicial under Evidence Code section 352. This argument, we think, actually shows the nonprejudicial nature of the challenged testimony: evidence of defendant's drug dealing dangerousness paled in comparison to the admittedly "horrific" claimed attack on Ebert.

Finally, defendant disputes the efficacy of the limiting instruction the trial court provided concerning this challenged testimony. We think the trial court explained the matter rather well to the jurors,

8

1
2
3
4
5
6

stating as pertinent (after the first item of the challenged testimony was presented -- the defendant "being so dangerous," a "bigwig in the drug game"):  "What [this] information is being admitted for is to allow Mr. Ebert here to explain his state of mind to you. . . . [T]hat information is not for you to consider for the truth of [the] matter asserted because we don't know whether it's true or not.  I'm not sure Mr. Ebert would know whether it's true or not.  It's only state of mind information. . . . To that extent, you may consider it."

We conclude the trial court did not abuse its discretion in admitting this challenged testimony from Ebert.

7    (People v. Gentry, slip op. at 5-8.)

8                      2.  Analysis

9          The United States Supreme Court "has never expressly held that it violates due process to

10    admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that

11    it violates due process to admit other crimes evidence for other purposes without an instruction

12    limiting the jury's consideration of the evidence to such purposes."  Garceau v. Woodford, 275

13    F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202

14    (2003).  In fact, the Supreme Court has expressly left open this question.  See Estelle, 502 U.S. at

15    75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law

16    would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

17    propensity to commit a charged crime").  See also Garza v. Yates, 472 Fed. Appx. 690, 691-92

18    (9th Cir. 2012) (the Supreme Court has not yet made a clear ruling that admission of irrelevant or

19    overtly prejudicial evidence constitutes a due process violation sufficient to warrant habeas

20    relief); Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not

21    acted objectively unreasonably in determining that the propensity evidence introduced against the

22    defendant did not violate his right to due process), cert. denied, 129 S. Ct. 941 (2009); Alberni v.

23    McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006) (denying the petitioner's claim that the

24    introduction of propensity evidence violated his due process rights under the Fourteenth

25    Amendment because "the right [petitioner] asserts has not been clearly established by the

26    Supreme Court, as required by AEDPA"), cert. denied, 549 U.S. 1287 (2007); United States v.

27    LeMay, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of evidence of

28    similar crimes in child molestation cases, under which the test for balancing probative value and

                                                                    9

1    prejudicial effect remains applicable, does not violate the due process clause).  Accordingly, the

2    state court's decision with respect to this claim is not contrary to United States Supreme Court

3    precedent.

4         Further, any error in admitting this testimony did not have "a substantial and injurious

5    effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637

6    (1993).  As the trial court found, the prior misconduct evidence was relevant to demonstrate the

7    victim's state of mind, an element of the criminal threats charge; that is, that Ebert was in

8    sustained fear because of petitioner's threats.  Although the prior misconduct evidence was

9    potentially powerful, "[the fact] that prior acts evidence is inflammatory is not dispositive in and

10   of itself."  LeMay, 260 F.3d at 1030.  In any event, as noted by the state appellate court, the prior

11   acts evidence was not nearly as inflammatory as the allegations against petitioner involving the

12   victim in this case.

13        Finally, during the trial, the judge admonished the jury, at the time Ebert testified that

14   petitioner was a "bigwig" and explained the reasons Ebert allegedly feared petitioner's threats,

15   that Ebert's testimony was not to be considered for the truth of the matter asserted, but only in

16   connection with Ebert's state of mind.  (CT 405-06.)  In addition, the jury was further instructed

17   that evidence admitted at trial for a limited purpose could be considered "only for that purpose

18   and no other."  (CT 1060.)  The jury was specifically instructed:

19             Witnesses were permitted to offer evidence of their belief of the
              [petitioner's] past.  You are to consider this evidence only for the
20             limited purpose for which it was admitted.  This evidence is not
              offered to prove, nor may it prove, that the events described by
21             those/the witness[es] actually occurred.

22   (CT 1060.)

23        The law presumes that juries follow their instructions.  Weeks v. Angelone, 528 U.S. 225,

24   234 (2000); United States v. Olano, 507 U.S. 725, 740 (1993).  More particularly, juries are

25   presumed to follow cautionary or limiting instructions.  Richardson v. Marsh, 481 U.S. 200, 211

26   (1987) (describing this presumption as an "almost invariable assumption of the law"); Tennessee

27   v. Street, 471 U.S. 409, 414-15 (1985) (trial court's limiting instruction, regarding admission of

28   ////

1    confession of defendant's accomplice to rebut defendant's claim that his own confession was the

2    product of coercion, was adequate to protect defendant's Confrontation Clause rights.)

3        Accordingly, petitioner is not entitled to relief on his first claim.

4        B. <u>Exclusion of Defense Evidence</u>

5        Petitioner claims that the trial court erred in excluding three lines of defense evidence,

6    which allegedly violated his right to a defense, due process, a fair trial, and his ability to confront

7    and impeach witnesses' testimony against him.  In his petition, petitioner limited this federal

8    habeas claim to the excluded testimony of Benson, Hillhawkins and Mason.  (ECF No. 1 at 7.)

9    Petitioner contends the exclusion of evidence deprived him of the right to present a defense that

10    Ebert fabricated the assault based on Ebert's own habit and history/fixation on similar assaults

11    with flashlights.  (ECF No. 1 at 27.)

12        Respondent argues that because petitioner's proposed evidence was not trustworthy or

13    material, the state court properly rejected petitioner's claim.

14        1. <u>State Court Opinion</u>

15        The last reasoned rejection of petitioner's claim is the decision of the California Court of

16    Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

17    this claim as follows:

> 18
> 19    Defendant contends the trial court abused its discretion in excluding three lines of evidence he proffered.  (<u>People v. Alvarez</u> (1996) 14 Cal.4th 155, 201 [setting forth this review standard].)  We disagree.
>
> 20
> 21    First, defendant sought to have Marlena Benson testify that Ebert, the victim here, had bragged to her that he had struck one Leslie Calvert over the head with a flashlight, and that he could get away with "murder" because of his informant status with SINTF. The trial court excluded the statement of getting away with murder because, as even defendant conceded at trial and again on appeal, there was no real evidence of murder (the "flashlight battery" occurred in April 2006 and Calvert apparently died in the fall of 2009).  But the trial court allowed Benson to testify that Ebert had told her "he could just get away with anything," apparently because of his informant status with SINTF.
> 22
> 23
> 24
> 25
> 26

27    ////

28

The trial court did not abuse its discretion in this regard.  Defendant proffered this evidence to show Ebert's ability and willingness to manipulate his police handlers.   The evidence the trial court allowed in did just that, and did so without raising the unsupported issue of actual murder.

Second, defendant sought to have a Mr. Hillhawkins testify that Devin Chandler had told Hillhawkins that Agent Robert Carrell of SINTF had told Chandler that Carrell would help Chandler make a deal.

Defendant argued at trial that this double hearsay was admissible to show Chandler's state of mind.  We cannot say the trial court abused its discretion in excluding this tangential evidence under Evidence Code section 352; moreover, Agent Carrell testified at trial and could have been asked about any offer he made to Chandler.

Third, and last, defendant sought to have Joshua Mason and Mark Hence impeach Ebert's denial on cross-examination that he (Ebert) had told Agent Carrell that what defendant had done to him to enforce the drug debt was the kind of thing Ebert used to do in his juvenile days.  The trial court precluded this proffered testimony, deeming it confusing and collateral under Evidence Code section 352 since Agent Carrell could be asked this matter directly.  We find no abuse of discretion in this regard.  And, indeed, the defense called Agent Carrell, who confirmed that Ebert had made such a statement to him.

(People v. Gentry, slip op. at 8-9.)

        2. Legal Standards

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law."  Washington v. Texas, 388 U.S. 14, 19 (1967).  But the constitutional right to present a defense is not absolute. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998).)  "Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."  Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (citations omitted).

////

1        The United States Supreme Court has not "squarely addressed" whether a state court's

2    exercise of discretion to exclude testimony violates a criminal defendant's right to present

3    relevant evidence.  Moses v. Payne, 555 F.3d 742, 758-59 (9th Cir. 2009).  Also, the Court has

4    not clearly established a "controlling legal standard" for evaluating discretionary decisions to

5    exclude such evidence.  Id. at 758; see also Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011)

6    ("Between the issuance of Moses and the present, the Supreme Court has not decided any case

7    either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a

8    complete defense or 'establish[ing] a controlling legal standard' for evaluating such exclusions."),

9    cert. denied, 132 S. Ct. 593 (Nov. 14, 2011).  Rather, the Supreme Court focused only on whether

10   an evidentiary rule, by its own terms, violated a defendant's right to present evidence, and found

11   that AEDPA does not permit a federal habeas court to conclude that a state court's discretionary

12   exclusion of evidence pursuant to a valid evidentiary rule violated clearly established Supreme

13   Court precedent.  Moses, 555 F.3d at 756-60; accord Horell, 644 F.3d at 983.  Subsequently, the

14   Supreme Court held that its precedent did not clearly establish that the Constitution "requires a

15   case-by-case balancing of interests" before a Nevada state rule precluding the admission of

16   extrinsic evidence to impeach a witness could be enforced, stating that the "Court has never held

17   that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for

18   impeachment purposes."  Nevada v. Jackson, 133 S. Ct. at 1992-94 (exclusion of evidence under

19   state law for the purpose of focusing the fact-finder and conserving judicial resources was

20   appropriate and did not impinge on a defendant's right to present a complete defense.).

21        Consequently, the Ninth Circuit has noted that "under AEDPA, 'even clearly erroneous'

22   evidentiary errors 'that render a trial fundamentally unfair may not permit the grant of federal

23   habeas corpus relief if not forbidden by 'clearly established federal law,' as laid out by the

24   Supreme Court.'"  Hale v. Cate, 530 Fed. Appx. 636, 637 (9th Cir. 2013) (quoting Holley v.

25   Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009)), cert. denied, Hale v. Beard, 134 S. Ct. 1302

26   (Feb. 24, 2014).  Moreover, while Moses only addressed the exclusion of expert testimony under

27   a Washington state statute that provided guidelines for the admission of expert testimony, other

28   courts have since extended the holding in Moses to preclude habeas claims arguing that exclusion

                                                            13

1   of other, non-expert evidence by state courts was contrary to, or an unreasonable application of,

2   controlling Supreme Court precedent, or warranted habeas relief under AEDPA.  See, e.g., Chein

3   v. Powers, 2013 WL 6535301, at *10 (C.D. Cal. Dec. 13, 2013) (citing Moses, and finding that

4   state trial court's exclusion of proposed defense evidence regarding conduct of victim because it

5   was irrelevant did not warrant habeas relief under AEDPA); Borges v. Gipson, 2013 WL

6   6240423, at *15 (C.D. Cal. Dec. 2, 2013) (citing Moses, and finding that California trial court's

7   exclusion of proposed cross-examination pursuant to California Evidence Code § 352 because

8   questioning would be cumulative and time-consuming did not warrant habeas relief under

9   AEDPA); White v. Knipp, 2013 WL 5375611, at *19 (E.D. Cal. Sept. 24, 2013) (citing Moses,

10  and finding that state court's exclusion of third party culpability evidence did not warrant relief

11  under AEDPA); Gonzalez v. Kernan, 2009 WL 1110793, at *18 (C.D. Cal. Apr. 21, 2009)

12  (same).

13          Finally, even if it can be found that a trial court committed a constitutional error in

14  excluding evidence, it still must be shown that such error had a substantial and injurious effect or

15  influence on the jury's verdict under Brecht, 507 U.S. at 619.  See Fry v. Pliler, 551 U.S. 112, 115

16  (2007) (affirming Ninth Circuit's application of Brecht to exclusion of third party culpability

17  evidence); Moses, 555 F.3d at 760 (even where exclusion of evidence was constitutional error,

18  habeas relief not warranted unless Brecht standard is satisfied).

19                      3.  Discussion

20          Here, the trial court evaluated the proffered testimony under California Evidence Code

21  § 352 and exercised its discretion to exclude it.  Petitioner challenges the trial court's

22  discretionary exclusion of defense evidence under a valid state rule, which like Rule 403 of the

23  Federal Rules of Evidence, requires a balancing test between the probative value of the evidence

24  and the probability that its admission will consume undue time or "create substantial danger of

25  undue prejudice, or confusing the issues of or misleading the jury."  Cal. Evid. Code § 352.  The

26  Supreme Court has found such rules to be constitutional.  Holmes, 547 U.S. at 326-27.  In any

27  event, petitioner does not challenge the validity of the rule itself.  See Moses, 555 F.3d at 758.

28  ////

                                14

1    For purposes of Section 2254(d)(1), the state court's decision that the trial court did not

2    abuse its discretion in excluding such evidence as untrustworthy, tangential, confusing and

3    collateral cannot be said to violate any clearly established holding of the Supreme Court.  See

4    Moses, 555 F.3d at 758-60; see also Jackson, 133 S. Ct. at 1992-94.  The Supreme Court has not

5    clearly established a controlling legal standard for evaluating a trial court's discretionary decision

6    to exclude defense evidence in general or witness testimony in particular.  Cf. Hale, 530 Fed.

7    Appx. at 637 (rejecting claim that right to present a defense was violated by exclusion of

8    testimony of eyewitness expert, because there was no Supreme Court precedent establishing a

9    constitutional right to eyewitness testimony).  Given the absence of Supreme Court precedent, the

10   state appellate court's rejection of petitioner's constitutional claim could not be contrary to, or an

11   unreasonable application of, clearly established federal law.  See Horell, 644 F.3d at 983; Moses,

12   555 F.3d at 758-59; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (Section

13   2254(d)(1) is not satisfied when a state court has "decline [d] to apply a specific legal rule that

14   has not been squarely established by" the Supreme Court.).

15   In any event, Ebert's credibility was thoroughly impeached at trial.  Benson was allowed

16   to testify that Ebert bragged that he could get away with anything (Reporter's Transcript ("RT")

17   1062), supporting the defense theory that Ebert manipulated Agent Carrell.  Agent Carrell

18   testified that Ebert told Carrell that what petitioner did to Ebert to enforce the drug debt was the

19   kind of thing Ebert used to do in his juvenile days, also supporting the defense theory.  Defense

20   counsel cross-examined Carrell.  (RT 769-70; 779; 996.)  Chandler's preliminary hearing

21   testimony was admitted confirming that Chandler believed he was offered a deal in exchange for

22   helping Agent Carrell.  (RT 819-20.)  In addition, the jury was aware that Chandler was granted

23   immunity from prosecution.  (RT 742.)  Evidence was introduced that Ebert used

24   methamphetamine and sold it to support himself.  (RT 411.)  Ebert admitted he was dropped from

25   the witness protection program because he returned to Shasta County and made terrorist threats,

26   for which he subsequently pled guilty.  (RT 494, 506.)  Defense counsel pointed out numerous

27   discrepancies between Ebert's initial statements to Carrell concerning the events at the ranch and

28   Ebert's testimony at trial concerning such events, and vigorously cross-examined Ebert.  (RT

15

1  410-501; 516-25.)  Defense counsel also cross-examined eyewitness Collins.  (RT 565-80; 590-

2  615; 622-25.)

3       Further, even if the excluded evidence had been admitted at petitioner's trial for all

4  purposes it would not have absolved him of the charged crimes because of the evidence against

5  him.  "The exclusion of tangential evidence of something that *may* have happened at a different

6  time and place does not constitute a due process violation."  Walters v. McCormick, 122 F.3d

7  1172, 1177 (9th Cir. 1997).  Thus, even assuming *arguendo* that the trial court's exclusion of

8  such testimony was constitutional error, the error could not have had a "substantial and injurious

9  effect or influence in determining the jury's verdict" under the circumstances of this case.  Brecht,

10  507 U.S. at 623.  In light of the evidence of petitioner's involvement in the attack on Ebert, the

11  exclusion of the proposed testimony does not lessen the court's confidence in the verdict.  Thus,

12  the state appellate court's rejection of this claim was not contrary to, and did not involve an

13  unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).

14       C.  Witness Chandler

15       Petitioner claims that the trial court erred by allowing the prosecutor "to parade the likely

16  accomplice Chandler before the jury knowing he would not testify despite immunity."  (ECF No.

17  1 at 29.)  Petitioner argues that California Evidence Code § 352, "section 913," and case law

18  preclude it, but if it does occur, a limiting instruction is required upon request.  (ECF No. 1 at 29.)

19  Petitioner argues that the state court's finding that the instruction admonishing the jury not to

20  speculate why others involved were not charged was an unreasonable determination of fact and

21  law because the instruction was too generic and the appearance by Chandler was too prejudicial.

22       Respondent counters that there is no Supreme Court authority holding that a defendant's

23  constitutional rights are violated when a witness takes the stand and asserts a Fifth Amendment

24  right not to testify even if granted immunity.  In any event, respondent contends that the jury was

25  properly instructed not to speculate about why Chandler was not on trial.

26  ////

27  ////

28  ////

16

1          1. State Court Opinion

2          The last reasoned rejection of petitioner's claim is the decision of the California Court of

3   Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

4   this claim as follows:

5               Defendant contends the trial court erred when it had Devin
              Chandler take the witness stand to formally declare he would not
6             testify, even with a grant of immunity. After this appearance,
              Chandler was deemed unavailable and his preliminary hearing
7             testimony was presented.

8
              Defendant argues that, without a limiting instruction such as
9             CALJIC No. 2.11.5 (telling jurors there are many reasons why
              another person who may have been involved in the crime is not on
10            trial, and not to speculate about this), the jurors here would
              impermissibly infer from Chandler's muted appearance that
11            defendant was threatening witnesses.

12
              However, the trial court did instruct the jury with the CALCRIM
13            version of the CALJIC No. 2.11.5 instruction, CALCRIM No. 373,
              which says virtually the same thing. Consequently, even if we
14            assume error in this regard, we find no prejudice.

15

16  (People v. Gentry, slip op. at 9-10.)

17          2. Analysis

18          The United States Supreme Court has not held that a defendant's constitutional rights are

19  violated when a witness takes the stand and asserts a Fifth Amendment right not to testify even if

20  granted immunity.  Absent such authority, this court must defer to the state court's decision.

21  Moses, 555 F.3d at 754.  In any event, as the Court of Appeal noted, the jury was properly

22  instructed as follows:

23            The evidence shows that another person may have been involved in
              the commission of the crimes charged against the defendant.  There
24            may be many reasons why someone who appears to have been
              involved might not be a codefendant in this particular trial.  You
25            must not speculate about whether that other person has been or will
              be prosecuted.  Your duty is to decide whether the defendant on
26            trial here committed the crimes charged.

27  (CT 1070.)  As set forth above, juries are presumed to follow the instructions given.  Weeks, 528

28  U.S. at 234.

17

1    Accordingly, the state court's decision was not contrary to, nor an unreasonable

2  application of, clearly established federal law.  Therefore, petitioner's third claim should be

3  denied.

4    D.  Refusal to Instruct on Allegedly Late Discovery

5    Petitioner claims that, contrary to the state court's decision, it was error for the trial court

6  to refuse to instruct on the defense theory that jurors could consider three discovery delays.

7  Petitioner contends that the appellate court's "passing discussion of the merits and its suggestion

8  of forfeiture for [petitioner's] failure to cite or argue the three discovery lines in his briefs on

9  appeal represent unreasonable determinations of fact and law."  (ECF No. 1 at 32.)  To the extent

10  that counsel failed to preserve this claim at trial or on appeal, petitioner contends such failure

11  constitutes ineffective assistance of counsel.

12    Respondent counters that there is no basis for habeas relief on such claim, and that in any

13  event, such claim is procedurally barred.

14    1.  Procedural Default

15    Respondent contends that petitioner's claim is procedurally defaulted.  As a general rule, a

16  federal habeas court will not review a claim rejected by a state court if the decision of the state

17  court rests on a state law ground that is independent of the federal question and adequate to

18  support the judgment.  Coleman v. Thompson, 501 U.S. 722, 729 (1991).  In order to be

19  "independent," "the state law basis for the decision must not be interwoven with federal law."

20  La Crosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001).  "To be 'adequate,' the state procedural

21  rule must be 'strictly or regularly followed' and 'consistently applied.'"  Id.  However, a

22  procedural default does not bar a federal court from considering a federal claim on habeas review

23  "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its

24  judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263 (1989).

25  Accordingly, petitioner's claim is defaulted absent a showing of cause for the default and actual

26  prejudice as a result of the alleged violation of federal law.  Coleman, 501 U.S. at 753.

27    The last reasoned rejection of petitioner's first claim is the decision of the California

28  Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court

1    addressed this claim as follows:

2            The trial court refused defendant's request to instruct the jurors that
3            they "may consider the effect, if any, of [the] late disclosure" of
             certain information by the prosecution (CALCRIM No. 306). This
4            instruction, defendant argues in his opening brief, was "based on
             prosecution delays in disclosing: 1. [T]he name and address of a
5            percipient witness who was not called (one of Mr. Ebert's family
             members who saw him soon after the alleged offenses); 2. [S]everal
6            pieces of information in Mr. Ebert's informant file later ordered
             disclosed by the court; and 3. [T]he details of deals and
7            consideration contemplated in Ebert's 2009 DUI case not long
8            before the alleged offenses."

9            In his brief on appeal, defendant does not argue these points or even
             specifically identify the information he is talking about.
10           Consequently, he has forfeited these points by not providing
             argument about them. (People v. Stanley (1995) 10 Cal.4th 764,
11           793.)

12

13   (People v. Gentry, slip op. at 10.)

14         Here, the California Court of Appeal stated that the denial of petitioner's claim concerning

15   late discovery was based on a state procedural bar.  Specifically, the appellate court found that

16   petitioner failed to argue or even specifically identify the information he was talking about.

17         Petitioner made no showing related to cause and prejudice in his reply to respondent's

18   answer.  (ECF No. 25.)  Petitioner has not otherwise carried his burden to place at issue the

19   independence and adequacy of the cited state law grounds that the Court of Appeal relied on to

20   foreclose review of this claim.  See Bennett v. Mueller, 322 F.3d 573, 580, 586 (9th Cir. 2003).

21   But California's inadequate briefing rule is a well-established and consistently applied rule.  See

22   People v. Hovarter, 44 Cal.4th 983, 1029, 81 Cal.Rptr.3d 299 (2008); People v. Gray, 37 Cal.4th

23   168, 198, 33 Cal.Rptr.3d 451 (2005); People v. Stanley, 10 Cal.4th at 793; Cal. Ct. R. 8.204(a)

24   (1)(C).  Further, the rule does not require the state court to determine if federal error has occurred.

25   The state court simply determines whether the claim was adequately briefed.  Thus, the

26   inadequate briefing rule is an independent and adequate state law procedural rule that bars federal

27   relief.  Also, petitioner has not demonstrated cause for the default and prejudice, or that a

28   fundamental miscarriage of justice would occur if this court did not consider the merits of the

1  procedurally defaulted claim.  See Coleman, 501 U.S. at 750.  As a result, petitioner's fourth

2  claim regarding late discovery is procedurally defaulted.  Therefore, it is recommended that

3  petitioner's fourth claim be denied as procedurally defaulted.

4               2.  Merits

5        The California Court of Appeal went on to find that based on its review of the record,

6  petitioner was not denied his ability to present a viable defense theory:

7
8
9
10
11
> In any event, when we turn to the People's brief, we learn, regarding these three alleged discovery delays:  (1) the name of the family member witness who was not called, and the fact that two other similarly situated family members did testify; (2) that defendant had every SINTF person testify who had any institutional experience with Ebert; and (3) that defendant had the deputy district attorney testify who handled Ebert's DUI case.  In light of these facts, the trial court's refusal to instruct with CALCRIM No. 306 did not deprive defendant, as he argues, of a viable defense theory.

12  (People v. Gentry, slip op. at 11.)

13        Jury instruction issues are generally matters of state law for which federal habeas relief is

14  not available.  Estelle, 502 U.S. at 67-68.  A federal habeas court does not review jury

15  instructions to determine whether they violate state law, as federal habeas relief "does not lie for

16  errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  The federal habeas question is

17  whether the jury instruction issue so infected the entire trial that the resulting conviction was

18  fundamentally unfair.  Estelle, 502 U.S. at 71-73; Clark v. Brown, 450 F.3d 898, 904 (9th Cir.

19  2006); Henderson v. Kibbe, 431 U.S. 145, 156 (1977) (case where improper instruction will

20  justify reversal is a "rarity").

21        Such fundamental unfairness may occur if a defendant is "arbitrarily deprive [d]" of a

22  state law procedure such as a favorable jury instruction.  Laboa v. Calderon, 224 F.3d 972, 979

23  (9th Cir. 2000).  However, the burden on the habeas petitioner is "especially heavy" where the

24  alleged error involves the failure to give an instruction.  Hendricks v. Vasquez, 974 F.2d 1099,

25  1106 (9th Cir. 1992).  Moreover, a federal court reviews such a habeas claim under a harmless

26  error standard; that is, whether the error had a "substantial and injurious effect or influence in

27  determining the jury's verdict."  Brecht, 507 U.S. at 637.

28  ////

1    Here, petitioner fails to explain how the state court's refusal to instruct with CALCRIM

2    No. 306 violates the Constitution.  No clearly established Supreme Court precedent guarantees a

3    criminal defendant the right to an adverse jury instruction regarding alleged discovery violations.

4    Moreover, petitioner fails to demonstrate how the omission of this jury instruction allegedly

5    deprived him of a viable defense.  As the appellate court noted, petitioner was able to address the

6    lack of discovery with other evidence.  Thus, petitioner has not demonstrated that the failure to

7    instruct the jury with CALCRIM 306 had a substantial and injurious effect on the jury's verdict.

8    Accordingly, the state court's rejection of this claim was not contrary to, or an

9    unreasonable application of, clearly established federal law, or was such finding based on an

10   unreasonable application of the facts.  Petitioner's fourth ground does not warrant federal habeas

11   relief.

12        E.  Unanimity Instruction Refused

13   Petitioner claims that the trial court erred in refusing to instruct on the requirement of

14   unanimity with regard to the charge of threats with use of a knife, and argues that such refusal

15   resulted in the denial of petitioner's jury trial and due process rights.  Respondent counters that

16   there is no Supreme Court precedent to support such contention; thus, the state court's decision

17   that there was no error in the omission of the unanimity instruction is an interpretation of state

18   law which is binding on this court.

19   The last reasoned rejection of petitioner's claim is the decision of the California Court of

20   Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

21   this claim as follows:

22               Defendant contends the trial court erred prejudicially in refusing
             defendant's request to instruct on juror unanimity regarding "the
23           charge of criminal threats with personal use of a knife" (count 3 --
             § 422), plus the knife use enhancement (§ 12022, subd. (b)).  We
24           disagree.

25               In a criminal case, the constitutional right to jury unanimity requires
             that when a defendant is charged with a single criminal act and the
26           evidence shows more than one such act, either the prosecution must
             select the specific act relied upon to prove the charge, or the jury
27           must be instructed that it must agree unanimously that defendant

28

committed the same act.  (People v. Russo (2001) 25 Cal.4th 1124, 1132; People v. Deletto (1983) 147 Cal.App.3d 458, 471-472.)

"The unanimity instruction is not required when the acts alleged are so closely connected as to form part of one transaction. [Citations.] Th[is] 'continuous conduct' rule [also] applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them." (People v. Stankewitz (1990) 51 Cal.3d 72, 100.)

Here, the evidence showed that defendant, during one violent episode while armed with a knife, threatened to cut Ebert from head to toe, threatened to cut Ebert up and throw him on the woodpile, and tried to cut Ebert's penis.  At one point during this episode, defendant also stabbed Ebert in the elbow with the knife.  And after this episode ended, when Ebert was outside leaving, defendant threatened Ebert that he (defendant) would find and kill him if Ebert did not return with his offered payment of marijuana plants.

The trial court properly refused to instruct on juror unanimity concerning the count 3 charge of criminal threats enhanced by personal knife use, because this offense falls within the "continuous conduct" rule.  The threats comprising this offense encompassed those uttered by defendant, while armed with the knife, during the single violent episode noted above.  The evidence of the other threat -- the one occurring after this violent episode ended when Ebert was outside leaving -- did not show the use of a knife.  And the knife stab to the elbow concerned its own charge -- assault with a deadly weapon (a knife) (count 4 -- § 245, subd. (a)(1)), as the prosecutor argued and defendant concedes.

Furthermore, the defense here was that Ebert had lied about what had happened -- i.e., defendant offered essentially the same defense to each of the criminal threat acts and there was no reasonable basis for the jury to distinguish between the threats comprising the charge of criminal threats with knife use.

Finally, defendant faults the People for not discussing People v. Melhado (1998) 60 Cal.App.4th 1529.  There was no need to.  The continuous conduct rule did not apply in Melhado, and an instruction on juror unanimity was required there, because the evidence showed two distinct criminal threats -- one at 9:00 a.m. and the other at 11:00 a.m. (Id. at pp. 1533-1536.)

We conclude the trial court properly refused to instruct on juror unanimity regarding the charge of criminal threats enhanced by personal knife use.

(People v. Gentry, slip op. at 11-13.)

1    The Constitution does not require unanimous agreement on the theory underlying a

2    conviction.  See Richardson v. United States, 526 U.S. 813, 817 (1999) (federal jury need not

3    unanimously decide which set of facts make up a particular element of a crime); Schad v.

4    Arizona, 501 U.S. 624, 631-32 (1991) (plurality holding that conviction under different theories

5    does not violate due process); see also McKoy v. N. Carolina, 494 U.S. 433, 449 (1990)

6    (Blackmun, J., concurring) ("[D]ifferent jurors may be persuaded by different pieces of evidence,

7    even when they agree upon the bottom line.[]  Plainly there is no general requirement that the jury

8    reach agreement on the preliminary factual issues which underlie the verdict.[]") (footnotes

9    omitted).

10    While a California trial court may be required under state law to instruct the jury that it

11    must unanimously agree on the acts underlying the offense in order to convict, federal law is clear

12    that, at least in a non-capital case, there is no federal right to a unanimous jury verdict.  Compare

13    People v. Diedrich, 31 Cal.3d 263, 280-81, 82 Cal. Rptr. 354 (Cal. 1982), and People v.

14    Crawford, 131 Cal.App.3d 591, 595-96, 182 Cal. Rptr. 536 (Cal. Ct. App.1982) (unanimity

15    instruction required where defendant was charged with possession of one or more firearms by

16    felon and jury could disagree as to particular firearm), with Schad, 501 U.S. at 634 n.5 ("a state

17    criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict"),

18    and Apodaca v. Oregon, 406 U.S. 404, 410-13 (1972) (no constitutional right to unanimous jury

19    verdict in non-capital criminal cases).  Consequently, at least in non-capital criminal cases, courts

20    within the Ninth Circuit have routinely dismissed habeas claims arguing that a California

21    "unanimity" jury instruction was required.  See, e.g., Sullivan v. Borg, 1 F.3d 926, 927-28 (9th

22    Cir. 1993) (citing Schad to find that instruction allowing California jury to convict defendant of

23    first degree murder without unanimity as to whether he had committed felony murder or

24    premeditated murder did not violate petitioner's due process rights.)

25    Because there is no federal law requiring a jury verdict to be unanimous, as with any

26    instructional error, petitioner is entitled to habeas relief only if he can show that the trial court's

27    failure to give a unanimity instruction "so infected the entire trial that the resulting conviction

28    violates due process."  Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147

(1973)).  Where the alleged error is failure to give an instruction, the burden on the petitioner is
"especially heavy."  Henderson, 431 U.S. at 155.  Petitioner has failed to meet this burden.  As
found by the state court, the evidence showed that petitioner, while armed with a knife, threatened
to cut Ebert from head to toe, to cut Ebert up and throw him on the woodpile, and tried to cut
Ebert's penis.  Moreover, petitioner's defense was that Ebert lied about what happened; defense
counsel's main focus in closing argument was questioning Ebert's credibility (RT 1233-34; 1246;
1257).  In addition, the record reflects that the trial court gave the following general unanimity
instruction:  "Your verdict on each count and any special findings must be unanimous.  This
means that, to return a verdict, all of you must agree to it."  (CT 1090.)  In closing argument, the
prosecutor described for the jury the threats charged, the charge where the knife use related to the
assault with a deadly weapon charge, as well as the enhancements for use of the knife.  (RT 1203-
04, 1206, 1207, 1208.)  Under the circumstances of this case, the trial court's refusal to give a
unanimity instruction did not render petitioner's trial fundamentally unfair.  The decision of the
state appellate court rejecting this claim is not contrary to nor an unreasonable application of
federal law.  Accordingly, the claim should be denied.

      F.  Alleged Error in Instructing Jury Not to Speculate

      Petitioner claims that the trial court erred in giving the pre-2004 version of this instruction
because the jury "needed to fully air out" whether the testimony of Collins and the former
testimony of Chandler were the result of fears of prosecution rather than the truth.  Petitioner
argues this error was acute because no accomplice testimony instruction was given regarding
Chandler or Collins, despite evidence that Collins brandished a knife en route to the scene, and
Chandler brandished a flashlight later.

      Respondent contends the state court's rejection of this claim cannot be contrary to nor an
unreasonable application of Supreme Court precedent because there is no such precedent
supporting petitioner's claim.  Moreover, the jury was aware that Chandler was granted
immunity, so the jury could evaluate his preliminary hearing testimony for bias.  (RT 742.)
Collins testified at trial, so petitioner could have directly asked her whether she was given any
consideration in exchange for her testimony, but he did not.  Respondent maintains that such

question would have been futile, however, because Ebert testified that Collins did not attack him.

(RT 378, 390.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> Defendant claims the trial court erred prejudicially by instructing with CALCRIM No. 373, as follows:  "The evidence shows that another person may have been involved in the commission of the crimes charged against the defendant.  There may be many reasons why someone who appears to have been involved might not be a codefendant in this particular trial.  You must not speculate about whether that other person has been or will be prosecuted.  Your duty is to decide whether the defendant on trial here committed the crimes charged."

> Defendant argues that CALCRIM No. 373 improperly foreclosed the jury from discussing or considering whether April Collins or Devin Chandler were testifying against defendant in exchange for not being prosecuted themselves.  Because of such concern, case law has concluded that a pre-2004 version of this instruction should not be given when an uncharged participant in the crime testifies against the charged defendant.  (People v. Hernandez (2003) 30 Cal.4th 835, 875-876.)

> Even if we assume for the sake of argument that the trial court erred in this regard in giving CALCRIM No. 373, we would not reverse for three reasons.  First, the jury knew that Chandler had been granted immunity, and that Collins had not been implicated in the actual beating of Ebert.  Second, defendant has argued in this appeal (see pt. III. of the Discussion, ante, at pp. 9-10) that an instruction such as CALCRIM No. 373 was needed here so that jurors would not impermissibly infer from Chandler's muted appearance at trial that defendant was threatening witnesses. And, third, the discredited pre-2004 version of this instruction (CALJIC No. 2.11.5) stated, as pertinent, that jurors were "not [to] discuss or give any consideration as to why the other person is not being prosecuted in this trial or whether [he or she] has been or will be prosecuted" (italics added); CALCRIM No. 373, as given here, is phrased more innocuously -- jurors merely are not to " speculate about whether [the] other person has been or will be prosecuted" (italics added).

> We conclude the trial court did not err prejudicially in giving CALCRIM No. 373.

1   (People v. Gentry, slip op. at 13-14.)

2       Erroneous jury instructions do not support federal habeas relief unless the infirm

3   instruction so infected the entire trial that the resulting conviction violates due process.  Estelle,

4   502 U.S. at 72 (citing Cupp, 414 U.S. at 147).  See also Donnelly v. DeChristoforo, 416 U.S. 637,

5   643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or

6   even 'universally condemned,' but that it violated some [constitutional right]'").  The challenged

7   instruction may not be judged in artificial isolation, but must be considered in the context of the

8   instructions as a whole and the trial record overall.  Estelle, 502 U.S. at 72.  Moreover, relief is

9   only available if there is a reasonable likelihood that the jury has applied the challenged

10  instruction in a way that violates the Constitution.  Id. at 72-73.

11      For the reasons explained by the appellate court, the jury instructions as a whole did not

12  "so infect[ ] the entire trial that the resulting conviction violates due process."  See Estelle, 502

13  U.S. at 72.  The jury was aware that Chandler was granted immunity.  Collins testified at trial and

14  was therefore available for cross-examination.  Moreover, the record does not support any

15  inference that the jury may have applied the challenged instruction in a way that violates the

16  Constitution.  See id. at 72-73.  The jury was instructed correctly on the prosecution's burden of

17  proof and how to evaluate witness credibility and bias.  (RT 1050, 1051, 1053-54; 1090.)

18  Considered as a whole, the instructions given do not raise any constitutional concerns.

19      Thus, petitioner is not entitled to relief on this claim.

20      G.  Alleged Error in Denying Post-Trial Pitchess[3] Motion

21      Petitioner claims that the trial court erred in denying petitioner's post-trial request for in-

22  camera review of deputy McCormick's employment records.  Petitioner argues there was an

23  ample prima facie showing that McCormick's records could show he fabricated or embellished

24  his long-belated written report of a key admission by petitioner to curry favor with McCormick's

25  superiors.  (ECF No. 1 at 39.)

26

27  ───────────────────
    [3]  Pitchess v. Superior Court, 11 Cal. 3d 531 (1974), superseded by statute as stated in People v.
    Mooc, 26 Cal.4th 1216, 1219-20, 114 Cal. Rptr.2d 482 (2001), as modified (2002); see Cal. Penal
28  Code §§ 832.7, 832.8; Cal. Evid. Code §§ 1043-45.

1     Respondent contends there is no basis for relief on petitioner's state law discovery

2  violation, and there is no general constitutional right to discovery in a criminal case.  Although

3  petitioner does not allege a violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 86-87 (1963),

4  respondent contends that the record shows no <u>Brady</u> violation.

5     The last reasoned rejection of petitioner's first claim is the decision of the California

6  Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court

7  addressed this claim as follows:

8
9
> Defendant claims the trial court abused its discretion in denying his
> posttrial <u>Pitchess</u> motion.  (<u>Pitchess</u>, <u>supra</u>, 11 Cal.3d 531.)
> Pursuant to <u>Pitchess</u>, defendant wanted the court to examine in
10
> private the employment records of jailhouse Deputy Sheriff
> McCormick. McCormick testified at trial that defendant stated to
11
> him -- perhaps jokingly, while asking McCormick to make
> photocopies of some police reports in this matter -- that he
12
> (defendant) never did anything with a flashlight but he grabbed the
> man's genitals and threatened to cut them off; McCormick did not
13
> write a report about this statement until six months later, and only
> then at Agent Carrell's prompting.
14

15
> In his <u>Pitchess</u> motion, defendant contends that Deputy McCormick
> fabricated defendant's jailhouse admission to curry favor with his
16
> (McCormick's) employer because he had recently failed a drug test.

17
> The standard of review on the denial of a <u>Pitchess</u> motion is abuse
18
> of discretion.  (<u>People v. Mooc</u> (2001) 26 Cal.4th 1216, 1228.)
> Under <u>Pitchess</u>, though, a defendant need satisfy only a "'relatively
19
> low threshold'" to have the trial court undertake a private
> examination of employment records.  (<u>Warrick v. Superior Court</u>
20
> (2005) 35 Cal.4th 1011, 1019.)

21
> We see no abuse of discretion in the denial of defendant's posttrial
22
> <u>Pitchess</u> motion.  As the trial court accurately noted in its ruling,
> the declaration supporting the motion did not even explicitly deny
23
> that defendant had made the statement to Deputy McCormick.
> Furthermore, McCormick testified as to why he wrote the report:
24
> His chain of command directed him to do so, and he believed his
> disclosure of the statement to Agent Carrell prompted this directive.
25

26  (<u>People v. Gentry</u>, slip op. at 15-16.)

27  ////

28

27

1    Under California law, "a criminal defendant has a limited right to the discovery of peace

2    officer personnel records" if the defendant can show "good cause" in the form of an affidavit

3    setting forth "the materiality thereof to the subject matter involved in the pending litigation."  See

4    Chambers v. Superior Court, 42 Cal.4th 673, 679, 68 Cal. Rptr.3d 43 (2007).  A motion seeking

5    such discovery is known as a Pitchess motion.

6    Petitioner's claim involves solely the interpretation and application of state law and, as

7    such, is not cognizable on federal habeas review.  See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at

8    67-68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state

9    court determinations on state law questions"); Smith v. Phillips, 455 U.S. 209, 221 (1982) ("A

10   federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation

11   of some provision of the United States Constitution."); see also, e.g., Tafoya v. Clark, 2013 WL

12   5924509, at *11 (C.D. Cal. Nov.13, 2013) (collecting cases).

13   Liberally construing petitioner's claim to implicate the due process right to receive

14   material exculpatory and impeachment evidence under Brady, 373 U.S. at 86-87, his claim is

15   cognizable on federal habeas review.  See, e.g., Kelley v. Wofford, 2014 WL 1330639, at *17

16   (E.D. Cal. Apr. 2, 2014) ("A trial court's denial of a defendant's Pitchess motion is cognizable in

17   habeas corpus where the denial implicates the defendant's due process right to receive material

18   exculpatory and impeachment evidence."); Gordon v. Puckett, 2010 WL 891265, at *10 (C.D.

19   Cal. Mar. 7, 2010) (same).  To establish a Brady violation, a petitioner must show three things:

20   that the evidence was favorable to him because it was either exculpatory or impeaching; that the

21   evidence was suppressed by the prosecution either willfully or inadvertently; and that he was

22   prejudiced by the nondisclosure.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

23   Evidence is material for purposes of a Brady only if there is a "'reasonable probability'

24   that had the evidence been disclosed the result at trial would have been different."  Wood v.

25   Bartholomew, 516 U.S. 1, 5 (1995).  Disclosure of a requested file is not warranted unless the

26   defendant first "establish[es] a basis for his claim that it contains material evidence."  Ritchie, 480

27   U.S. at 58 n.15; Harrison v. Lockyer, 316 F.3d 1063, 1066 (9th Cir. 2003).  The Ninth Circuit has

28   found that the Pitchess preliminary requirement of good cause complies with Supreme Court

1  precedent under <u>Brady</u> (as modified in <u>Ritchie</u>, 480 U.S. at 58 n.15), and has held that

2  California's procedure is not contrary to Supreme Court precedent.  <u>Harrison</u>, 316 F.3d at 1066

3  (holding that the denial of <u>Pitchess</u> discovery does not violate due process if the defendant makes

4  "no showing that [a police personnel] file contained complaints material to his defense").

5       Here, the trial court reasonably found that the declaration in support of the <u>Pitchess</u>

6  motion was insufficient, and that there was no denial that petitioner made the statement attributed

7  to him by McCormick.  (RT 1328.)  Moreover, the appellate court pointed out that McCormick

8  testified that his chain of command directed him to write the report (RT 706-07), and that his

9  disclosure of the statement to Agent Carrell prompted the order to write the report.  McCormick

10 also testified that the report was accurate.  (RT 712.)

11      Petitioner's <u>Brady</u> claim fails because there has been no showing by petitioner that Deputy

12 McCormick's personnel records that were not reviewed by the trial court constituted evidence

13 that would have qualified as material under <u>Brady</u>.  <u>See, e.g.</u>, <u>Harrison</u>, 316 F.3d at 1066; <u>United</u>

14 <u>States v. Zuno-Arce</u>, 44 F.3d 1420, 1425 (9th Cir.) ("To prove a <u>Brady</u> violation, a defendant

15 must show that the government withheld material exculpatory evidence."), <u>cert. denied</u>, 516 U.S.

16 945 (1995); <u>see also</u> <u>United States v. Agurs</u>, 427 U.S. 97, 110-11 (1976) ("The mere possibility

17 that an item of undisclosed information might have helped the defense, or might have affected the

18 outcome of the trial, does not establish 'materiality' in the constitutional sense."); <u>United States v.</u>

19 <u>Michaels</u>, 796 F.2d 1112, 1116 (9th Cir. 1986) (observing that "mere speculation" about materials

20 in the government's files does not trigger a disclosure obligation under <u>Brady</u>), <u>cert. denied</u>, 479

21 U.S. 1038 (1987).  Rather, petitioner merely argues that the records "*could* show [McCormick]

22 fabricated or embellished his long belated written report of a key admission by [petitioner] to

23 curry favor with superiors."  (ECF No. 1 at 39 (emphasis added).)  Such speculation is

24 insufficient to demonstrate the undisclosed information was material, as defined under <u>Brady</u>.

25      Thus, there is no basis for finding or concluding that the state courts' rejection of

26 petitioner's federal due process claim pertaining to discovery of Deputy McCormick's personnel

27 records either was contrary to or involved an unreasonable application of clearly established

28 Supreme Court law.

H. <u>Alleged Sentencing Error</u>

Petitioner next claims he was denied due process and suffered double jeopardy when the trial court erred in imposing unstayed terms under Counts 3 and 4, because the crimes were all part of one physical assault.  Respondent counters that although both crimes relied on the same injury to Ebert, the crimes represent separate offenses because (a) petitioner was held accountable for criminally threatening Ebert, during which petitioner held and used a knife, and (b) petitioner was held liable for assaulting Ebert with a knife when petitioner stabbed Ebert in the elbow.  Because these were separate offenses, respondent argues that the punishments attached to each offense do not violate double jeopardy principles.

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> Defendant asserts the trial court erred under section 654 by imposing unstayed sentences on count 3 (criminal threats, enhanced with knife use) and count 4 (assault with a knife).  Admittedly, couched in such spare terms, a section 654 issue is piqued.  But as we explain, the facts show something else and the trial court properly imposed unstayed sentences on counts 3 and 4.
>
> Section 654 proscribes multiple punishment not only for a single act, but for multiple acts that are committed in a single transaction encompassing a single intent and objective.  (<u>People v. Latimer</u> (1993) 5 Cal.4th 1203, 1208.)  Whether a defendant entertained multiple criminal objectives is a factual decision for the trial court, a decision we uphold if supported by substantial evidence.  (<u>People v. Nubla</u> (1999) 74 Cal.App.4th 719, 730 (<u>Nubla</u>).)  For section 654 purposes, separately punishable acts may occur when none of the acts was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to any other.  (<u>Nubla</u>, at pp. 730-731.)
>
> As we noted above in discussing the unanimity instructional issue (<u>see</u> Discussion, pt. V., ante, at pp. 11-12), the evidence showed that defendant, during a single episode while armed with a knife, made multiple violent threats to Ebert.  This evidence comprised the count 3 charge of criminal threats enhanced by knife use (§§ 422, 12022, subd. (b)).  We also noted in that discussion that, at one point during this episode, defendant stabbed Ebert in the elbow with the knife.  This evidence comprised the count 4 charge of assault

30

1
2

with a deadly weapon (a knife; § 245, subd. (a)(1)), as the prosecutor argued to the jury and defendant concedes.

3
4
5
6
7
8
9
10

Viewing counts 3 and 4 in this way, and there is substantial evidence supporting this view, these two counts constituted separate acts separately punishable under section 654. Moreover, as the trial court noted in its ruling in citing Nubla, the stabbing did not facilitate the criminal threats. (See Nubla, supra, 74 Cal.App.4th at p. 731 [the defendant's "act of pushing his wife onto the bed and placing the gun against her head was not done as a means of pushing the gun into her mouth, did not facilitate that offense and was not incidental to that offense. The trial court was entitled to conclude that each act was separate for purposes of Penal Code section 654."].)

We conclude the trial court properly imposed unstayed sentences on counts 3 and 4.

11

(People v. Gentry, slip op. at 16-17.)

12

1.   Petitioner's State Law Claim

13

California Penal Code Section 654(a) provides:

14
15
16
17

(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

18
19
20
21
22

Cal. Penal Code § 654(a). As discussed above, petitioner's claim, based on a violation of California state law, is not cognizable on federal habeas review. Estelle, 502 U.S. at 67. Because the California Court of Appeal found no violation of the multiple punishment prohibition of § 654, this federal habeas court is bound by the state courts' interpretation and application of its own law. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

23

2.   Fifth Amendment

24
25
26
27

The Double Jeopardy Clause of the Constitution provides that no person shall "be subject for the same offen[s]e to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause is enforced against the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 787 (1969). The Supreme Court has previously held that this clause protects

28

31

1    against successive prosecutions for the same offense after acquittal or conviction and against

2    multiple criminal punishments for the same offense.  Monge v. California, 524 U.S. 721, 727-28

3    (1998) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).

4         "[W]here the same act or transaction constitutes a violation of two distinct statutory

5    provisions, the test to be applied to determine whether there are two offenses or only one, is

6    whether each provision requires proof of a fact which the other does not. . . ."  Brown v. Ohio,

7    432 U.S. 161, 166 (1977) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)).  "If

8    each requires proof of a fact that the other does not, the Blockburger test is satisfied,

9    notwithstanding a substantial overlap in the proof offered to establish the crimes."  Brown v.

10   Ohio, 432 U.S. at 166 (quoting Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975)).

11        Here, petitioner was convicted under state law of separate, distinct criminal acts -- making

12   criminal threats, and assault with a deadly weapon.  The offenses require proof of distinct

13   elements to support convictions.  Thus, the convictions do not violate the "same elements" test of

14   Blockburger, 284 U.S. at 304, and petitioner is not entitled to relief on this ground.

15        I.  Cumulative Error

16        Finally, petitioner claims that the cumulative effect of the errors alleged herein constitute

17   a denial of due process.

18        The California Court of Appeal for the Third Appellate District on petitioner's direct

19   appeal denied this claim, stating, "[f]inding no significant individual error, we find no cumulative

20   error."  (People v. Gentry, slip op. at 17.)

21        The Ninth Circuit has concluded that under clearly established United States Supreme

22   Court precedent the combined effect of multiple trial errors may give rise to a due process

23   violation if it renders a trial fundamentally unfair, even where each error considered individually

24   would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly,

25   416 U.S. at 643, and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  "The fundamental

26   question in determining whether the combined effect of trial errors violated a defendant's due

27   process rights is whether the errors rendered the criminal defense 'far less persuasive,' id., 410

28   U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's

1  verdict." Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).  See also Hein v. Sullivan, 601

2  F.3d 897, 916 (9th Cir. 2010) (same).

3       This court has addressed each of petitioner's claims and concluded that no error of

4  constitutional magnitude occurred.  This court also concludes that the alleged errors, even when

5  considered together, did not render petitioner's defense "far less persuasive," and did not have a

6  "substantial and injurious effect or influence on the jury's verdict."  Accordingly, petitioner is not

7  entitled to relief on his claim of cumulative error.

8  VI.  Conclusion

9       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

10  habeas corpus be denied.

11      These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

16  he shall also address whether a certificate of appealability should issue and, if so, why and as to

17  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

18  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

19  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

20  service of the objections.  The parties are advised that failure to file objections within the

21  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

22  F.2d 1153 (9th Cir. 1991).

23  Dated:  June 10, 2015

24

25                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE
26

27  /gent0142.157

28

                                             33